# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GOOD KARMA, LLC, et al., ) | |
| ) | |
| Petitioners, ) | Nos. 07 C 2697 |
| ) | 07 C 3930 |
| v. ) | 07 C 4740 |
| ) | 07 C 5505 |
| UNITED STATES OF AMERICA, ) | |
| ) | Judge John W. Darrah |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

A Petition to Quash Formal Document Requests and multiple Petitions to Quash Summonses ("Petitions") have been filed in this and other District Courts across the nation. Several Petitions filed in the Northern District of Illinois have been consolidated in this Court: Case Nos. 07 C 2967, *Good Karma, LLC, et al. v. United States*; 07 C 3930, *Good Karma, LLC, et al. v. United States*; 07 C 4740, *Portfolio Properties, Inc., et al. v. United States*; and 07 C 5505, *Ridge Trading, LLC, et al. v. United States*. Presently pending before this Court are the United States' Motions to Deny Petition to Quash and For Enforcement of the IRS Summonses in Case Nos. 07 C 3930, 07 C 4740, and 07 C 5505.

## BACKGROUND

A reading of the Petitions, the parties' briefs, and the parties' exhibits supports the following summary of the alleged operative facts.

Petitioners are Illinois limited liability companies that primarily did and/or do business in Brazil. Petitioners are in the business of consumer receivable management and collection, partnering with creditors for the servicing and collection of semi-performing and performing consumer

receivables in a trillion-dollar global industry that is driven by increasing levels of consumer debt, increasing defaults of the underlying receivables, and increasing utilization of third-party providers to collect such receivables. John Rogers, an attorney with an MBA in international finance, was involved in the research and eventual creation for the industry in Brazil as to the numerous Petitioners.

The Internal Revenue Service ("IRS") has launched an audit of each Petitioner for tax years ending on December 31, 2003; December 31, 2004; or both. Pursuant to the audit, the IRS has propounded a series of Information Document Requests (IDRs), IRS Form 4564, upon each Petitioner. Prior to issuing the IDRs, the IRS attempted to settle with the individual investors of each Petitioner. The IRS is examining transactions that generated losses claimed from writing down the value of "distressed debt," which consisted of consumer account receivables obtained from one or more Brazilian retail stores. These transactions are referred to as Distressed Asset and Debt ("DAD") tax shelters, and were the subject of the IRS's Coordinated Issue Paper dated April 18, 2007.

According to the IRS, under a DAD tax shelter, a foreign entity that does not pay United States taxes sells purportedly high-basis, low-value ("distressed") debt to a United States entity taxed as a partnership in exchange for a payment that is a very small percentage of the face value of the debt. The United States entity then contributes the distressed debt to other entities taxed as partnerships, interests in which are subsequently sold to tax shelter participants. The tax shelter participants then claim the full or a percentage of the face value of the distressed debt as a loss to

offset income earned from other sources. If the DAD tax shelter participant cannot substantiate the basis of the distressed assets or the transaction does not otherwise comply with all the provisions of the Internal Revenue Code or does not otherwise satisfy judicial doctrines, such as step-transaction and economic substance, the IRS will disallow the resulting deductions.

The examinations involving DAD tax shelters are taking place on two tracks: (1) the correctness of returns filed by entities that passed on losses to United States taxpayers and (2) the correctness of returns filed by those United States taxpayers and their proper tax liabilities. The Petitioners fall within the first track – United States taxpayer participants in these transactions, through their interest in one or more entities like the Petitioners, have claimed losses on their federal income tax returns related to those transactions of approximately $39,000,000 in 2003 and $119,000,000 in 2004.

According to the IRS, Rogers, the summoned person, and others created, organized and facilitated DAD transactions in which foreign entities that do not pay United States taxes contributed purportedly "distressed" consumer receivables (aged account receivables and post-dated checks obtained from Brazilian retailers) to United States entities, termed by Rogers as "master trading LLCs." The master trading LLCs, in turn, contributed the distressed receivables to other United States entities, designated by Rogers as "trading LLCs." Sometimes, several tiers of entities were involved. Rodgers created these LLC entities and continues to manage many of them. Many of the LLCs designated an entity controlled by Rogers, Jetstream Business Limited, as their tax matters partner under 26 U.S.C. § 6231(a)(7). Rogers then sold interests in the trading companies to tax shelter participants.

3

As the person who created and organized the transactions under examination by the IRS, and as the tax matters partner of some of the LLCs, the IRS believes that Rogers should have information about the receivables contributed to the LLCs, the value of the receivables at the time of contribution and thereafter, and the motive and business purpose for engaging in the transactions. For example, the IRS obtained a copy of an engagement letter from one of the co-promoters of Rogers' "scheme." The engagement letter states, in part: "To secure a two point two million dollar ($2,200,000.00) loss our fees will be one hundred forty one thousand dollars ($141,000.00) .... The transaction will be divided into two parts. The first part will take place in December of 2003 in the amount of $1,100,000.00 .... The second part will occur in January of 200[4] in the amount of $1,100,000.00." This engagement letter demonstrates that the fees charged a tax shelter participant in one of Rogers' DAD transactions were "pegged" directly to the tax loss generated for the tax shelter participant from the transaction, and it also promises to arrange to produce specified loss amounts at a specific time in the future.

Petitioners have attempted to comply with the IDRs; and attorneys for the Petitioners have continuous communications with numerous IRS Agents, including: Larry Weinger, Ray Tabor, Piotr Kleszcz, Kathy Medlar, Thomas Pike, Susan White, Mary Anne Harrison, and Chris Therman. In 2007, the IRS began propounding Formal Document Requests (FDRs) upon each Petitioner.

In November and December 2006, IRS agents warned a Petitioner's attorney, Sweta Shah, that the lack of timely responses to the IDRs could result in the IRS's imposing sanctions against the attorney pursuant to "Circular 230."

The multiple summonses in Case No. 07 C 3930 seek testimony from Rogers and essentially seek the same documents, the only difference being the specific Petitioner. The summonses seek:

> Unless otherwise sated, the time period relates to the period beginning January 1, 2003 through December 31, 2004.
> 1. All documents regarding legal advice or tax advice in connection with Good Karma, LLC, and/or its activities, the legal or tax consequences of their activities, and/or tax return positions to be taken with respect to items relating to the receivables held by Good Karma, LLC.
> 2. All documents relating to the anticipated non-tax and/or tax benefits, or the lack thereof, and/or risks of Good Karma, LLC, and/or its activities.
> 3. All documents, including but not limited to engagement letters, representation letters, agreements, invoices, billing records, fee allocations, and tax correspondence related to legal, professional, management, accounting and tax advice in connection with Good Karma, LLC, and/or its activities.
> 4. All minutes, notes, correspondence, emails, calendar entries, and other recordings relating to or reflecting meetings, conferences and telephone conversations in which Good Karma, LLC, and/or its activities were discussed.

The summonses in Case Nos. 07 C 4740 and 07 C 5505 seek only the testimony of Rogers.

## ANALYSIS

The Internal Revenue Code authorizes the IRS to issue administrative summonses for "the purpose of ascertaining the correctness of any return . . . [or for] determining the liability of any person for any internal revenue tax . . . ." 26 U.S.C. § 7602(a). Section 7602(a) authorizes the IRS:

> (1) To examine any books, papers, records, or other data which may be relevant or materials to such inquiry;
> (2) To summon . . .
> any person having possession, custody, or care of books or accounts containing entries relating to the business of the person liable for tax or required to perform the act, or

5

> any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

26 U.S.C. § 7602(a). The United States may seek to compel compliance with a summons in response to an action to quash that summons. *See* 26 U.S.C. § 7609(b)(2(A).

First, the government must make a *prima facie* case that the summons was issued in good faith. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Kris*, 658 F.2d 526, 536 (7th Cir. 1981) (*Kris*). This requires the government to show that: (1) the investigation underlying the summons has a legitimate purpose, (2) the inquiry may be relevant to that purpose, (3) the information sought is not already within the Commissioner's possession, and (4) the administrative steps required by the Internal Revenue Code have been followed in issuing the summons. *See 2121 Arlington Heights Corp. v. Internal Revenue Serv.*, 109 F.3d 1221, 1224 (7th Cir. 1997) (*Arlington Hts.*); *Kris*, 658 F.2d at 536. Because the statute is read broadly, in order to ensure that the enforcement powers of the IRS are not unduly restricted, the government's burden "is a slight one." *Kris*, 658 F.2d at 536. The government ordinarily demonstrates its *prima facie* case through affidavits of the agents involved in the investigation. *See Arlington Hts.*, 109 F.3d at 1224; *Kris*, 658 F.2d at 536.

If the government meets its burden, the burden shifts to the petitioner to demonstrate that the enforcement of the summons would constitute an abuse of process. *See Arlington Hts.*, 109 F.3d at 1224. The petitioner can do so either by disproving the existence of one of the elements of the government's *prima facie* case or identifying specific facts suggesting that the IRS issued the summons in bad faith. *See Arlington Hts.*, 109 F.3d at 1224. The petitioner's duty is "a heavy one"

in which the petitioner must present specific facts from which a court may infer a possibility of some wrongful conduct by the government. *See Kris*, 658 F.2d at 540. If the petitioner can present enough specific facts to infer this possibility of some wrongful conduct by the government, he is entitled to an evidentiary hearing. *See Kris*, 658 F.2d at 540. Whether a hearing is needed is left to the court's discretion. *See Arlington Hts.*, 109 F.3d at 1226.

Here, the government has included the declaration of Larry Weinger, an IRS agent involved in examining DAD tax shelters, including those at issue. Weinger declares that the summonses at issue are part of the investigation underlying DAD tax shelters, the information sought is relevant to that purpose, the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Internal Revenue Code have been followed in issuing the summonses. Thus, the government has demonstrated a *prima facie* case for enforcement of the summonses.

Petitioners argue against the *prima facie* case and that the summonses were issued in bad faith. Petitioners have submitted the affidavits of John Rodgers and Sweta Shah in support thereof.

### *Legitimate Purpose*

First, Petitioners argue that the investigation lacks a legitimate purpose as evidenced by the IRS's harassment and threats. The alleged harassment and threats include: (1) allegations of threats during settlement negotiations of severe penalties if parties did not settle, (2) threats directed at Shah of possible sanctions for late responses, (3) unnamed IRS auditors labeled Petitioners' efforts to comply as sincere, and (4) Agent Weinger indicated that the examinations were being "guided by district counsel."

7

To prevail on their claim of "harassment," Petitioners must establish that the IRS adopted an "institutional posture" to harass them. *See Arlington Hts.*, 109 F.3d at 1226. For example, an IRS's "tough language" directed toward a petitioner that could be interpreted as a threat to ruin the petitioner's business was not enough to demonstrate bad faith on the part of the government because the petitioner failed to demonstrate that the agent's motivation infected the institutional posture of the IRS. *See Arlington Hts.*, 109 F.3d at 1226.

Even accepting Petitioners' above claims as true, Petitioners have failed to demonstrate a lack of legitimate purpose because of bad faith. Petitioners' claim of threats during settlement negotiations is not supported by any statements made under oath; instead, it is only alleged in the Petitions. Nor do statements made to Petitioners' attorney, Shah, about late responses to the IRS and possible imposition of sanctions against an attorney practicing before the IRS demonstrate an institutional posture of the IRS to harass or threaten Petitioners. The statements regarding the possibility of sanctions were accurate, and Petitioners fail to demonstrate facts that they were made as part of the IRS's posture to harass and threaten Petitioners. *See Arlington Hts.*, 109 F.3d at 1226. Petitioners claim that some auditors called Petitioners' efforts to comply with the tax laws "sincere"; however, this contradicts, rather than supports, Petitioners' claim of an institutional posture within the IRS to threaten or harass the Petitioners.

Petitioners also argue that the IRS's "shifting positions" on a tax policy document demonstrates bad faith by the government. Petitioners allege that an internal memorandum, signed by twenty-one top IRS executives, allegedly instituted a program or policy designed to capture Petitioners' lawful bad business-debt deductions as "tax shelter transactions" or "abusive transactions." Petitioners contend that they initially sought the memorandum through the Freedom

8

of Information Act, and the IRS claimed that it was unaware of the document that Petitioners sought. Later, the IRS withheld certain documents from Petitioners' FOI requests as being part of the deliberative process. Petitioners contend that these withheld documents include the memorandum of the top executives and that the "shift" in position by the IRS infers impropriety in the IRS policy. However, other than Petitioners' contentions and unsupported inferences, Petitioners fail to demonstrate a reasonable inference that the withheld document is in fact the sought-after memorandum that shows bad faith on the part of the IRS and its investigation and resulting subpoenas.

Lastly, contrary to Petitioners' claim, the fact that the examining IRS agents sought legal advice from district counsel during the course of an investigation does not demonstrate bad faith. In his affidavit, Rogers averred that Agent Weinger "indicate[d] that the investigation was merely a tool to obtain discovery before litigation." However, in their response brief, Petitioners retreat from this averment: "While Agent Weinger may not have expressly" made the statement, a reasonable inference could be made that such was the sole purpose because agents spoke with district counsel. There is no prohibition from IRS agents' speaking with district counsel during an examination, and Petitioners present no other facts supporting their allegations. *Compare PAA Management Ltd. v. United States*, No. 91 C 168, 1992 WL 346314 (N.D. Ill. Nov. 19, 1992) (bad faith demonstrated because IRS agents' affidavits admitted that the IRS did not have any need for the summoned material except for use in other litigation).

*Relevancy*

Petitioners also argue the summoned material is not relevant to the IRS's investigation. Relevancy in summons-enforcement cases is "relaxed." *See Arlington Hts.*, 109 F.3d at 1224. The information must "have the potential to shed some light on any aspect" of the investigation. *See Arlington Hts.*, 109 F.3d at 1224.

The government asserts that the information requested is relevant because Rogers was involved in the creation and organization of the transactions in question and is the tax matters partner for some of the LLCs. Rogers would also likely have information about the receivables contributed to the LLCs, the value of the receivables at the time of contribution and thereafter, the entities' motive for engaging in the transactions, and the business purpose of the transactions. Rogers' testimony is, therefore, relevant.

As to the summoned documents, Petitioners argue that the summonses are overly broad, seeking essentially all documents relating to the LLCs, which would include irrelevant documents. The documents requested are also relevant to the IRS investigation. Other than its conclusory argument that the requests are too broad, Petitioners have failed to present facts demonstrating that the breadth of the requested documents included irrelevant documents.

*Information Sought is in the Possession of the Commission*

Petitioners next argue that they have produced much of the summoned materials to the IRS and that Rogers has already testified for several hours before the IRS agents who issued the summonses. Petitioners identify several documents they have produced as evidence that materials sought in the summonses have already been given to the IRS. However, Petitioners have failed to demonstrate that the documents requested in the summonses were provided to the IRS prior to the

10

issuance of the summonses. Instead, Rogers' affidavit indicates only that eighteen boxes of documents were sent to the IRS in late September, immediately before Petitioners filed the Petitions to Quash. Furthermore, Rogers has not testified under oath.

There is nothing to support a claim that the administrative procedures for issuance of the summonses had not been followed. Therefore, based on the above, Petitioners have failed to rebut the government's *prima facie* case.

Petitioners also argue that even if they are unable to rebut the government's *prima facie* case, the summonses should be quashed because enforcement would constitute an abuse of process. In support of this argument, Petitioners repeat their allegations of harassment, threats, and ulterior motives by the government. For the reasons addressed above, this argument lacks merit.

Petitioners also argue that enforcement would be an abuse of process because the government is trying to avoid the more restrictive discovery rules in tax court in favor of its broader summons power. Petitioners rely on Agent Weinger's statement concerning the agents' discussing aspects of the examination with district attorneys. This argument was fully addressed above and does not support a finding that the government is trying to avoid more restrictive discovery rules applicable in possible future litigation in tax court.

Petitioners further argue the issuance of the summonses were for the improper purpose of extending the statute of limitations on examining the Petitioners' tax returns. Other than its conclusory argument, Petitioners fail to demonstrate that the purpose of the summonses were to

extend the statute of limitations and the filing of the summonses does not act to extend the statute of limitations. Furthermore, as discussed above, many documents that the government sought were not produced until after the summonses issued; and Rogers has yet to testify under oath pursuant to the summons.

Lastly, Petitioners make several arguments that the summonses are unconstitutional. Petitioners argue that enforcement of the summonses would violate their First Amendment right to freedom of speech and First Amendment right to petition the government for redress of grievances. Petitioners' First Amendment arguments are without merit. *See United States v. Kelley*, 864 F.2d 569, 576-77 (7th Cir. 1989); *United States v. Rowlee*, 899 F.2d 1275, 1278 (2nd Cir. 1990); *Schulz v. United States*, No. 05 C 530, 2006 WL 1788194 (D. Neb. June 26, 2006); *United States v. Union National Bank*, 371 F. Supp. 763, 768 (W.D. Pa. 1974) (*Union National*).

Petitioners also argue that enforcement of the summonses would constitute a violation of their Fifth Amendment right to due process. However, Petitioners' due process rights are not violated by the mere issuance of a third-party summons. In addition, due process is satisfied by Section 7609(b)(2), which creates a statutory avenue for judicial review. *See Mollison VIFX, LLC v. United States*, 481 F.3d 119, 125 (2nd Cir. 2007); *United States v. Gilleran*, 992 F.2d 232, 233-34 (9th Cir. 1993); *Union National*, 371 F. Supp. at 768.

Based on the above, Petitioners have failed to present specific facts from which the Court may infer a possibility of some wrongful conduct by the government. Accordingly, an evidentiary hearing is not required. *See Arlington Hts.*, 109 F.3d at 1226; *Kris*, 658 F.2d at 543.

extend the statute of limitations and the filing of the summonses does not act to extend the statute of limitations. Furthermore, as discussed above, many documents that the government sought were not produced until after the summonses issued; and Rogers has yet to testify under oath pursuant to the summons.

Lastly, Petitioners make several arguments that the summonses are unconstitutional. Petitioners argue that enforcement of the summonses would violate their First Amendment right to freedom of speech and First Amendment right to petition the government for redress of grievances. Petitioners' First Amendment arguments are without merit. *See United States v. Kelley*, 864 F.2d 569, 576-77 (7th Cir. 1989); *United States v. Rowlee*, 899 F.2d 1275, 1278 (2nd Cir. 1990); *Schulz v. United States*, No. 05 C 530, 2006 WL 1788194 (D. Neb. June 26, 2006); *United States v. Union National Bank*, 371 F. Supp. 763, 768 (W.D. Pa. 1974) (*Union National*).

Petitioners also argue that enforcement of the summonses would constitute a violation of their Fifth Amendment right to due process. However, Petitioners' due process rights are not violated by the mere issuance of a third-party summons. In addition, due process is satisfied by Section 7609(b)(2), which creates a statutory avenue for judicial review. *See Mollison VIFX, LLC v. United States*, 481 F.3d 119, 125 (2nd Cir. 2007); *United States v. Gilleran*, 992 F.2d 232, 233-34 (9th Cir. 1993); *Union National*, 371 F. Supp. at 768.

Based on the above, Petitioners have failed to present specific facts from which the Court may infer a possibility of some wrongful conduct by the government. Accordingly, an evidentiary hearing is not required. *See Arlington Hts.*, 109 F.3d at 1226; *Kris*, 658 F.2d at 543.

## CONCLUSION

For the reasons stated above, United States' Motions to Deny Petition to Quash and For Enforcement of the IRS Summonses in Case Nos. 07 C 3930, 07 C 4740, and 07 C 5505 are granted.

Dated: March 24, 2008

JOHN W. DARRAH
United States District Court Judge